**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and** | § | |
| **STATE OF TEXAS,** *ex rel.* | § | |
| | § | |
| **KATHERINE J. SIMMS,** | § | |
| **Relator,** | § | |
| | § | |
| **V.** | § | **A-10-CV-914-AWA** |
| | § | |
| **AUSTIN RADIOLOGICAL ASSOC.** | § | |
| **Defendant.** | § | |

<u>**ORDER**</u>

Before the Court are the following motions as well as their associated responses, replies, and supplements:

(1)    Defendant Austin Radiological Association's Motion to Strike Relator's Witness/Exhibit/Expert List (Dkt. No. 62); Relator Katherine J. Simms's Response in Opposition (Dkt. No. 64); Defendant Austin Radiological Association's Reply (Dkt. No. 67);

(2)    Relator Katherine J. Simms's Motion to Compel with Hearing Request (Dkt. No. 65); Defendant Austin Radiological Association's Response in Opposition (Dkt. No. 70); Relator Katherine J. Simms's Reply (Dkt. No. 74); Relator Katherine J. Simms's Supplement to Her Motion to Compel (Dkt. No. 80); Defendant Austin Radiological Association's Response and Objections to Relator's Affidavit to Supplement Her Motion to Compel (Dkt. No. 83); Relator Katherine J. Simms's Reply (Dkt. No. 84); Defendant Austin Radiological Association's Sur-Reply to Relator's Reply (Dkt. No. 86); Defendant Austin Radiological Association's Sur-Reply in Opposition to Relator's Motion to Compel (Dkt. No. 90); and

(3)    Defendant Austin Radiological Association's Motion to Compel Discovery Responses (Dkt. No. 76); Relator Katherine J. Simms's Response in Opposition to Motion (Dkt. No. 79).

# I. BACKGROUND

This is a *qui tam* action arising under the False Claims Act and Texas Medicaid Fraud Prevention Act ("TMFPA") brought by Katherine J. Simms ("Simms") against her former employer, Austin Radiological Association ("ARA").[1]  *See* 31 U.S.C. §§ 3729 *et seq.*; Tex. Hum. Res. Code §§ 36.001 *et seq.*  Simms's Amended Complaint alleges that in the course of her employment as Clinic Manager for ARA's Quarry Lake Clinic from November, 2007, until November, 2010, she discovered two fraudulent schemes by ARA that violate the False Claims Act and the TMFPA.  First, Simms charges that ARA wrongfully retained millions of dollars in overpayments from Medicare, Medicaid, and TRICARE/CHAMPUS reimbursements for services rendered by ARA.[2]  Second, Simms alleges that ARA billed these government payors for bone-density scans that were interpreted by medical technicians, rather than physicians, as required by law.  Finally, Simms claims that she was the victim of retaliation and wrongful discharge as a result of her investigation and reporting of ARA's fraud, in violation of the anti-retaliation provisions contained in both the False Claims Act and TMFPA.

ARA filed a Motion to Dismiss Simms's Amended Complaint on July 18, 2012.  On August 29, 2012, Judge Lee Yeakel issued an order granting in part and denying in part ARA's Motion to Dismiss (Dkt. No. 68).  Judge Yeakel dismissed Simms's claims with respect to ARA's wrongful retention of overpayments after May 20, 2009, and ARA's billing for bone-density scans, but

---

[1] The State of Texas declined to intervene on March 7, 2011 (Doc. No. 7).  The United States declined intervention on July 15, 2011 (Doc. No. 8).

[2] TRICARE/CHAMPUS is a federal-funded program providing benefits to eligible members of the armed forces, as well as their spouses and children.  10 U.S.C. §§ 1071–1104; 32 C.F.R. § 199.4(a).

otherwise denied ARA's Motion to Dismiss.[3]  Consequently, the remaining claims in this case are Simms's allegations with respect to ARA's wrongful retention of overpayments postdating May 20, 2009, as well as Simms's retaliation and wrongful discharge claim.  Although the issues in this case have been narrowed, the Parties still have unresolved discovery disputes.  Given the numerous pleadings filed with the Court concerning discovery in this case, the Court held a hearing on the aforementioned discovery motions on September 27, 2012.

## II.  SCHEDULING ISSUES

In her Motion to Amend Scheduling Order (Dkt. No. 59), Simms sought the extension of various deadlines in the case, specifically those related to the deadlines to designate expert witnesses. For its part, ARA filed a Motion to Strike Relator's Witness/Exhibit/Expert List, (Dkt. No. 62), seeking to prevent Simms from designating any experts as the deadline for doing so had passed. Both of these motions were filed prior to Judge Yeakel's ruling on ARA's Motion to Dismiss and the reassignment of this case to the undersigned.  On October 2, 2012, the undersigned issued an Amended Scheduling Order, setting a new trial date for this case and extending the discovery deadlines accordingly.  *See* Dkt. No. 82.  The deadline for Simms to file her designation of testifying experts and serve on all parties the materials required by FED. R. CIV. P. 26(a)(2)(B) is now July 1, 2013.  Accordingly, ARA's Motion to Strike Simms' witness, exhibit, and expert lists (Dkt. No. 62) is **DENIED AS MOOT**.

---

[3] The Fraud Enforcement Recovery Act of 2009 amended the False Claims Act's reverse false-claims provision to expressly include liability for retention of an overpayment. *See* Pub. L. No. 111-21, § 4(a), 123 Stat. 1621 (subjecting to civil liability any person who "knowingly conceals or knowingly and improperly avoids or decreases an *obligation* to pay or transmit money or property to the Government") (emphasis added) (codified as amended at 31 U.S.C. § 3729(a)(1)(G)); see also 31 U.S.C. § 3729(b)(3) (defining "obligation" as "an established duty whether or not fixed, arising . . . from the retention of any overpayment").

## III.  DISCOVERY MOTIONS

**A.      Relator Katherine J. Simms's Motion to Compel with Hearing Request (Dkt. No. 65)**

Simms's original Motion to Compel was filed prior to Judge Yeakel's Order granting in part and denying in part ARA's Motion to Dismiss.  In her original Motion to Compel, Simms requests that the Court order ARA to produce documents responsive to her *qui tam* claims against ARA. Despite a telephone conference with ARA aiming to resolve these discovery disputes, Simms claims that ARA remains unwilling to provide additional documents or drop its objections.  Specifically, she alleges that ARA's General Objections 2, 8, and 9 are improper and should be overruled.  Simms argues that: (1) Objection 2 is improper because documents maintained by ARA's compliance officer are not protected by privilege and are discoverable; (2) Objection 8 should be overruled because ARA has improperly defined "Relator's claims"; and (3) Objection 9 is invalid because ARA does not define the correct time frame for the scope of discovery in this lawsuit.  ARA's Response, which was filed after Judge Yeakel's Order on ARA's Motion to Dismiss, contends that: (1) some of the requested documents would be impossible or burdensome for ARA to produce; (2) the requests call for documents outside the relevant time frame; and (3) the requests include documents maintained by ARA's compliance officer and are therefore privileged.

Following Judge Yeakel's Order on ARA's Motion to Dismiss, the remaining issues are: (1) whether documents maintained by ARA's compliance officer are protected by privilege; (2) the relevant time frame for discovery; and (3) whether ARA has shown that production of documents would be unduly burdensome.  Simms's contention that ARA has improperly defined "Relator's Claims" was resolved through Judge Yeakel's Order.  Simms's remaining claims in this case are her "reverse false claim with respect to government overpayments arising on or after May 20, 2009" and

4

her claim "for retaliation under the federal and state acts." *See* Dkt. No. 68 at 18.  Consequently, to

the extent Simms's Motion to Compel requests relief for ARA's improper definition of "Relator's

Claims," such relief is DENIED AS MOOT.

1.      **Compliance Officer Privilege**

ARA relies on the language of §161.032(e) of the Texas Health and Safety Code in asserting

that documents maintained by its compliance officer are privileged and not subject to discovery.

Section 161.032(e) provides:

> The records, information, and reports received or maintained by a compliance officer
> retain the protection provided by this section only if the records, information, or
> reports are received, created, or maintained in the exercise of a proper function of the
> compliance officer as provided by the Office of Inspector General of the United
> States Department of Health and Human Services.

*See* TEX. HEALTH & SAFETY CODE § 161.032(e) (2013).  ARA contends that § 161.032(e) is not

linked with any of the preceding subsections of § 161.032 because there are no conjunctions linking

§ 161.032(e) with any of the preceding subsections.  ARA argues that § 161.032(e) "does not *afford*

anything, but rather, 'retains the protection provided by this section' **if** the conditions related to

receipt and maintenance in the exercise of the proper function of the compliance officer requirements

are met." Dkt. No. 70 at 13 (emphasis in original).  Simms asserts that § 161.032(e) should be read

in connection with previous subsections of § 161.032.  Specifically, Simms states that § 161.032(e)

does not provide a privilege or exception from disclosure affecting the scope of discovery as it

relates to documents retained by the compliance officer.  Instead, Simms argues that § 161.032(e)

"only retains the protections afforded elsewhere in Section 161.032, namely Section 161.032(c),"

which provides:

> Records, information, or reports of a medical committee, medical peer review
> committee, or compliance officer and records, information, or reports provided by

> a medical committee, medical peer review committee, or compliance officer to the governing body of a public hospital, hospital district, or hospital authority are not subject to disclosure under Chapter 552, Government Code.

*See* TEX. HEALTH & SAFETY CODE § 161.032(c) (2013). Section 552.005 of the Texas Government Code specifically notes that Chapter 552 "does not affect the scope of civil discovery under the Texas Rules of Civil Procedure" and does "not create new privileges from discovery." TEX. GOV. CODE § 552.005(a)–(b) (2013). Therefore, the question of whether ARA may assert a privilege for documents held by its compliance officer is closely linked to whether § 161.032(e) of the Texas Health and Safety Code should be read to include the protections in § 161.032(c). If the two subsections are read together, ARA would not be able to assert a compliance officer privilege because § 552.005 of the Texas Government Code, incorporated by reference in § 161.032(c), states that Chapter 552 does not affect the scope of civil discovery. In other words, the protections of § 161.032(c) or (e) do not affect the scope of civil discovery.

After carefully considering arguments from both parties, the Court overrules ARA's objection to produce discovery based on this privilege and thereby GRANTS Simms's Motion to Compel as it relates to ARA's assertion of a compliance officer privilege for documents retained by its compliance officer. This question of statutory interpretation appears to be unresolved by Texas courts, but general principles of statutory interpretation and a plain reading of § 161.032(e) weigh against ARA's interpretation of § 161.032(e) of the Texas Health and Safety Code.

Under the general principles of statutory construction in Texas, courts should turn first to the statutory language itself. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Courts should "presume that every word in a statute was chosen by the Legislature for a purpose." *Cooke v. City of Alice*, 333 S.W.3d 318, 322 (Tex.App.—San Antonio 2010, no pet.). When "statutory language

is clear and unambiguous, [courts] interpret its words according to their plain and common meaning unless that interpretation would lead to absurd results." *Id.* Furthermore, if "the Legislature uses a particular term in one section of a statute and excludes it in another, we must give the term meaning where used and must not imply it where it was excluded." *Id.* (citing *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995)).  In the context of discovery, the Texas Supreme Court has explained that "[p]rivileges are not favored in law and are strictly construed." *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 647 (Tex. 1985); *see also In re Living Centers of Tex., Inc.*, 175 S.W.3d 253, 258 (Tex. 2005). Considering § 161.032(e) in light of these principles, the Court finds ARA's interpretation to be improper.

At the hearing and in its brief, ARA asserted that § 161.032(e) should not be read as an extension of any of the preceding subsections of § 161.032 because there are no conjunctions linking § 161.032(e) to any of the preceding subsections.  As examples, ARA points to § 161.032(a)–(b), highlighting that there are no conjunctions connecting § 161.032(e) to these other subsections.  Yet this interpretation fails to give meaning to each word in the statute.  Section 161.032(e) states that "a compliance officer retain[s] the protection provided *by this section*" only if certain conditions are met.  The words "by this section" represent the conjunction ARA claims is lacking.  Section 161.032(e) itself does not offer any protections for "records, information, and reports received or maintained" by a compliance officer.  Standing alone, § 161.032(e) fails to provide any information regarding what protections are retained by a compliance officer.  Thus, to give meaning to the words "by this section," the Court must look to other provisions of the statute.  In this case, the most logical and reasonable provision to consider is § 161.032(c), which specifically protects "[r]ecords,

7

information, or reports of a . . . compliance officer and records, information, or reports provided by a . . . compliance officer to the governing body of a public hospital, hospital district, or hospital authority" under Chapter 552 of the Texas Government Code.  A plain reading of § 161.032(e) shows that the protections delineated in § 161.032(c) are retained by a compliance officer provided the compliance officer meets the restrictions set forth in § 161.032(e).

ARA's contention that § 161.032(e) should be read in the context of Subchapter D, covering Medical Committees, Medical Peer Review Committees, and Compliance Officers, also fails to accord with the general principles of statutory construction.  As mentioned previously, courts should give meaning to each word included in a statute. *Cooke*, 333 S.W.3d at 322.  "[E]very word of a statute must be presumed to have been used for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).  "Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose." *Id.*

Even within Subchapter D, the only other provision that includes the term "compliance officer" is § 161.032(b)(2), which allows meetings where the governing body of a hospital receives records, information, or reports provided by a compliance officer to be closed.  Plainly read, § 161.032 (b)(2) clearly only discusses protections afforded to the governing body of a hospital.  It makes no mention of protections retained by compliance officers. Thus, the language in § 161.032(e) referring to the protections provided to compliance officers "*by this section*" could not be referring to § 161.032(b)(2).  Aside from § 161.032(b)(2), no other provision in Subchapter D refers to compliance officers.  As such, the only reasonable reading of the language in § 161.032(e) would be to incorporate the protections afforded to compliance officers in § 161.032(c).  Therefore, a

8

compliance officer will only retain the protections of § 161.032(c) when the compliance officer comports with the restrictions outlined in § 161.032(e).[4]

Viewing ARA's assertion of the compliance officer privilege in light of the preceding discussion, it is clear that documents retained by its compliance officer are subject to discovery.  A plain reading of § 161.032(e) does not create a new privilege for compliance officers; rather, it incorporates the protections of § 161.032(c), including the provisions of § 552.005 of the Texas Government Code, which makes it clear that Chapter 552 does not affect the scope of discovery and does not create any new privileges.  This plain reading of § 161.032(e) is neither absurd nor does it produce an unreasonable result.  Consequently, the Court declines to adopt ARA's interpretation of § 161.032(e) and ARA may not assert a compliance officer privilege.  To the extent Simms's Motion to Compel seeks documents retained by ARA's compliance officer, the Court GRANTS the motion and overrules ARA's objections thereto.

**2.      Relevant Time Frame**

Simms and ARA also disagree on the relevant time frame for discovery.  In light of Judge Yeakel's August 29, 2012 Order, ARA asserts that "the relevant time period for discovery purposes

---

[4] The exclusion of compliance officers from other provisions in the statute lends further support to this Court's interpretation of § 161.032(e), particularly given the fact that references to compliance officers in § 161.032 were added together in 2001 by the Texas Legislature. 2001 Tex. Sess. Law Serv. Ch. 1511 (S.B. No. 11) (Vernon's).  The Legislature, despite amending § 161.032(b)(2), (c), and (e), chose not to include compliance officers in any other provision of Subchapter D.  This strongly suggests that only the amended subsections were applicable to compliance officers rather than the entire Subchapter.  The fact that "compliance officer" was added to the title for Subchapter D in 2001 does not persuade the Court that the entirety of Subchapter D was to apply to compliance officers.  "Compliance officer" was inserted as an *additional* group whose records, information, and reports are protected under § 161.032(c) and Chapter 552 of the Texas Government Code, aside from the protection already offered to medical committees or medical peer review committees.  This supports the Court's conclusion that compliance officers are to be viewed separately from medical committees and medical peer review committees.

for [Simms's] claims begins on May 20, 2009, the effective date of [the Fraud Enforcement Recovery Act of 2009 ("FERA")]."  *See* Dkt. No. 70 at 7.   However, ARA appears to dispute Simms's assertion that overpayments retained for services performed *prior* to May 20, 2009, are subject to discovery.  For example, in response to Simms's Requests for Production Nos. 49 and 59, ARA states that it will produce reports for "any credits *created for dates of service on or after* May 20, 2009." *Id.* at 5 (emphasis added).  Furthermore, ARA contends that the end date of the relevant time period for discovery is November 29, 2010— the date Simms filed her complaint—because Simms may only sue "for claims of which the relator is the original source." *Id.* at 7–8.  On the other hand, Simms argues that Judge Yeakel's ruling should be read to include overpayments retained *after* May 20, 2009, even if the services were rendered *before* May 20, 2009.  Simms seeks discovery concerning information related to all credits retained by ARA as of May 20, 2009, through the present, which may include records for services performed prior to May 20, 2009.

Having reviewed the arguments by both parties and Judge Yeakel's August 29, 2012 Order, the Court finds ARA's interpretation of the time frame to be too restrictive.  As Judge Yeakel noted, FERA became effective on May 20, 2009, and amended the False Claims Act's reverse false-claims provisions to expressly include liability for retention of an overpayment.  *See* Pub. L. No. 111-21, § 4(a), 123 Stat. 1621 (codified as amended at 31 U.S.C. § 3729(a)(1)(G)).  Thus, on May 20, 2009, ARA became subject to civil liability for "knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." *Id.*; *see also* 31 U.S.C. § 3729(b)(3) (defining "obligation" as "an established duty whether or not

10

fixed, arising . . . from the retention of any overpayment"). Thus, the significant date is not the date when medical services were rendered, as ARA suggests, but the effective date of FERA.[5]

Additionally, ARA's contention that Simms "can sue on behalf of the government only for claims of which [she] is the original source" is without merit. The "original source" argument that ARA seeks to advance applies only in the context of determining whether a court can exercise jurisdiction over a *qui tam* case under the False Claims Act. When a *qui tam* case brought under the False Claims Act is "based upon the *public disclosure* of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Accounting Office report, hearing, audit, or investigation, or from the news media," courts may not exercise jurisdiction over the case. 31 U.S.C. § 3730(e)(4)(A) (emphasis added). However, courts may exercise jurisdiction in such a case when it is brought by the Attorney General or "the person bringing the action is an *original source* of the information." *Id.* (emphasis added). In other words, the "original source" argument is an exception to the general rule that courts do not have jurisdiction over *qui tam* suits based on information that has been publicly disclosed. Here, Simms's allegations are not based upon any publicly-disclosed information; instead, she bases her allegations on various

---

[5] ARA argues that Judge Yeakel's August 29, 2012 Order limits discovery to those claims occurring on or after May 20, 2009. *See* Dkt. No. 86 at 1 ("[C]redit balances which may have existed as of May 20, 2009 for payments received before that time are not at issue and those credit balances and any related data are not within the scope of discovery."). In doing so, ARA appears to suggest that it may retain any government overpayments for services rendered prior to May 20, 2009, indefinitely without liability. However, Judge Yeakel's ruling merely evaluates whether Simms has sufficiently alleged a claim to survive dismissal. There is no language supporting ARA's assertion that Judge Yeakel's Order limited ARA's *liability* to government overpayments retained for services rendered after May 20, 2009. In fact, the Order specifically notes that Judge Yeakel was "unpersuaded" by ARA's argument that it could indefinitely retain government overpayments without facing any liability until the Patient Protection and Affordable Care Act's 60-day requirement became effective.

11

"payment/adjustment lists" she ran during her employment at ARA, which purportedly showed that ARA was retaining overpayments from the government for medical services it provided. There is no indication or claim in the record that Simms learned of these alleged overpayments from a public disclosure. As such, the "original source" exception is irrelevant and does not apply to this case. Consequently, ARA's reliance on the "original source" exception to limit the time frame of discovery is misplaced.

However, ARA is correct in noting that the time frame for conducting relevant discovery is not without limits. Although all information sought in discovery need not be admissible at trial, it must appear to be "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Furthermore, the information requested should be relevant to the claims in the case. *Id.* As a result, the Court finds Simms's suggested time frame for discovery to be too broad in scope at this time. Here, Simms has alleged that ARA improperly retained overpayments from government payors for medical services. She asserts that she ran "payment/adjustment lists" for random dates of service and discovered credit balances of various amounts for multiple patients. In many cases, these credit balances were for services performed prior to May 20, 2009.

Having considered the allegations presented, the effective date of FERA, and the need to limit discovery to a reasonable time period, the Court concludes at the present time that a reasonable period for discovery in this case shall run from January 1, 2007, until September 22, 2011—the latter date representing sixty days following the unsealing of this lawsuit. This time period reasonably allows Simms to fully develop her claims while protecting ARA from unreasonably broad discovery. Therefore, the Court GRANTS Simms's Motion to Compel to the extent it requests responsive

information within this discovery time frame.  As to discovery requests seeking information outside

this time frame, Simms's Motion to Compel is DENIED.

### 3.  Method of Producing Documents by ARA

In relation to Simms's requests for production for ARA's financial records, the parties also

dispute the method by which ARA should produce these documents.  Relying on the affidavits of

several ARA employees, ARA argues that production of these records is unduly burdensome and

some of the information is irrelevant to Simms's claims.  Simms, relying on an affidavit of Mary L.

Hoane, contends that production of this information is necessary for her claims and can be done in

a manner that is not unduly burdensome to ARA.

Although the bulk of the dispute focuses on the production of ARA's financial records, ARA

specifically notes two additional groups of categories where there appears to be disagreements.  ARA

claims that production of responsive documents to Simms's Request for Production No. 28, which

asks for ARA's Medicare enrollment forms, and No. 36, which calls for all email communication

to or from Simms during her employment at ARA, would be unduly burdensome.  In response to

Simms's Request for Production No. 28, ARA states the parties have agreed that ARA will produce

certification pages and a description of all the documents withheld with the possibility of further

supplementation, if needed.  For Simms's Request for Production No. 36, ARA asserts that its initial

inquiry of communications identified over 90,000 emails sent to or from Simms during her

employment at ARA.  ARA notes that Simms had agreed to provide search terms in order to limit

the scope of discovery but that the search terms had not yet been provided.  Furthermore, ARA

argues that production of all communications would be unduly burdensome and would lead to the

production of communications that are irrelevant to Simms's claims or implicate protections offered

by the Health Insurance Portability and Accountability Act (HIPAA).  Simms does not appear to contest ARA's statements that the parties had come to an agreement on how ARA was to provide discovery in response to Simms's Requests for Production Nos. 28 and 36.  Thus, the Court will not issue a ruling on Requests for Production Nos. 28 and 36 as it seems the parties are in agreement with regard to discovery on these two requests and the motion is therefore MOOT on these points.

Turning to ARA's financial records, after reviewing the parties' filings and considering the arguments proposed at the hearing, the Court finds that permitting discovery of this information would not be unduly burdensome to ARA.  However, in accordance with the Court's determination of the reasonable time period for discovery, Simms may only seek discovery of documents and communication from January 1, 2007, until September 22, 2011.  To the extent Simms's Motion to Compel requests information outside the scope of this time period, the motion is denied.

As support for its Motion to Compel, Simms provides the affidavit of Mary L. Hoane, a Certified Public Accountant in Texas.  At the hearing, Simms represented that the simplest manner by which to produce the data it is seeking is through copying the information through a "data dump" onto a hard drive provided by Ms. Hoane.  ARA's main objections to this approach are that this method would (1) improperly broaden the relevant time frame for discovery and (2) provide information that is not limited to potential retention of *government* overpayments, but financial records on all accounts where the government was not a payor.  Furthermore, ARA is concerned that providing such information would raise privacy issues under HIPAA.

The Court has already determined the relevant time period for discovery.  Simms will be permitted to conduct discovery concerning ARA's financial records within the time frame given previously.  Regarding the concern about patient confidentiality under HIPAA, ARA stated in its

14

Response and Objections to Ms. Hoane's affidavit that it will produce financial records "only after Ms. Hoane and anyone who will be given access to this information . . . sign a HIPAA business associate agreement, the format of which would first have to be agreed to by the parties." Dkt. No. 83 at 5.  On this point, the Court notes that Ms. Hoane has already signed the Court's confidentiality agreement.  *See* Dkt. No. 80 at 4.   Additionally, to protect the confidentiality of any patient information that is disclosed during discovery, Ms. Hoane represents that her colleagues are also prepared to sign a "HIPAA business associate agreement acceptable to all counsel," the same agreement that ARA has requested be signed prior to releasing any financial records.  *Id.*   Thus, ARA's concerns about patient confidentiality may be addressed by having Ms. Hoane and her colleagues sign mutually acceptable HIPAA business associate agreements.   Given the Parties' agreement on this issue, ARA cannot assert this concern as a reason for withholding its financial records.

As to whether production of ARA's financial records would be unduly burdensome, the Court finds ARA's arguments that such production would be unduly burdensome to be weak.  The Court understands that production of all financial records would certainly include accounts where no government payor was involved.  Records without government payors would not be relevant to Simms's remaining claims in the current suit.  ARA claims that reviewing its financial records and removing those accounts without government payors would be unduly burdensome.  However, in this case, Simms has agreed to take on that burden.  In her second affidavit, Ms. Hoane notes that her firm, Research & Planning Consultants, L.P., would be willing to assume the burden of reviewing ARA's financial records and eliminating those accounts where no government payor was involved.  *See* Dkt. No. 84, Exh. 1 at ¶ 5.  Of course, in reviewing ARA's financial records, Ms.

Hoane and her colleagues would be subject to any HIPAA business associate agreement that would have been signed in order to protect patient confidentiality.  Thus, ARA may choose either to review its financial records and remove those records without government payors itself or it can shift the burden of doing so to Simms.  Furthermore, the Court has also limited the time frame for discovery at this point.  Consequently, the Court is unpersuaded by ARA's argument that the production of data responsive to Simms's requests for financial information would be unduly burdensome.

As such, to the extent Simms seeks financial data between January 1, 2007, and September 22, 2011, the Court GRANTS Simms's Motion to Compel.  With respect to requests for financial data that are outside the reasonable time frame delineated by the Court, the motion is DENIED.

**B.      Defendant Austin Radiological Association's Motion to Compel Discovery Responses (Dkt. No. 76)**

In its Motion to Compel, ARA contends that Simms has failed to supplement her discovery responses and refuses to identify documents she is withholding so that ARA may evaluate her objections.  Additionally, ARA asserts that Simms has not responded to interrogatories which cover information about Simms's disputes with employers other than ARA, information regarding Simms's disclosures to OSHA, and information regarding Simms's social media profiles.  ARA claims that the documents being withheld and the interrogatories sought are all subject to discovery.

**1.      Request for Production No. 1: All documents obtained from ARA during and after your employment with ARA.**

**Request for Production No. 4: All documents and things in your possession, custody or control which originated from ARA.**

**Request for Production No. 5: All documents and things created or authored by employees or former employees of ARA.**

**Request for Production No. 7: All documents and things created or authored by you during your employment at Austin Radiological Association which you retained upon leaving our position at Austin Radiological Association.**

**Request for Production No. 8: All documents and things collected and retained by you during what you allege to have been protected activity in investigating an alleged False Claims Act and/or TMFPA complaint, if any.**

In this first set of disputed discovery responses, ARA essentially requests that Simms produce all documents related to her employment at ARA as well as any document or item Simms retained during her investigation of the alleged violations of the False Claims Act and the TMFPA. Simms objects to this discovery on the grounds that the requests are "overly broad" and "not limited in scope" to the issues in this case. Simms responds that she will produce all documents "that are related to or relevant to any of the issues in this lawsuit."

After reviewing arguments from both parties, the Court finds ARA's requests to be reasonable and grants these requests for production. Given Simms's retaliation claim, the Court does not find the requested documents to be unreasonably calculated to lead to the discovery of admissible evidence. Thus, the Court GRANTS ARA's Motion to Compel as to its Requests for Production Nos. 1, 4, 5, 7, and 8.

2.      **Request for Production No. 2: All documents upon which you intend to rely for your contention that Defendant violated the False Claims Act and/or TMFPA in connection with its interactions with you during your employment at Austin Radiological Association.**

**Request for Production No. 9: All documents upon which you intend to rely for your contentions that Defendant violated the False Claims Act in connection with its bone density measurement procedures.**

**Request for Production No. 10: All documents upon which you intend to rely for your contentions that Defendant violated the False Claims Act and/or TMFPA in connection with your dismissal from employment at Austin Radiological Association.**

17

**Request for Production No. 11: All documents upon which you intend to rely for your contentions that Defendant violated the False Claims Act and/or TMFPA in connection with your dismissal from employment at Austin Radiological Association.**

This set of requests for production asks for all documents Simms intends to rely upon for her contentions that ARA violated the False Claims Act and/or TMFPA. At the hearing on September 27, 2012, the parties represented to the Court that these contentions would be dropped for the time being, as the extended discovery period provided by the new Scheduling Order would allow the parties additional time to work through their issues regarding these discovery requests. Consequently, the Court will DENY ARA's Motion to Compel with regard to Requests for Production Nos. 2, 9, 10, and 11. ARA is hereby cautioned that should these issues remain unresolved even with the extended discovery period, it will need to re-file these requests with the Court.

**3.     Request for Production No. 3: All documents which have been numbered by you as Bates Nos. SIMMS000103-1236 and SIMMS001436.**

ARA also requests documents that were apparently labeled with Simms's Initial Disclosures but were later removed, creating a gap in the Bates Numbered pages. ARA argues that Simms has failed to either produce the documents or identify them with sufficient particularity so that ARA may assess the applicability of any privilege asserted by Simms. Simms asserts that it has already explained to ARA that the documents were included in error, were not Simms's documents, and consisted of a public record.

In the course of discovery, it is common for documents to be accidentally included in a parties' initial disclosures or otherwise. Simms appears to have already explained to ARA the reasons why they were removed. The Court finds nothing in the record, and ARA failed to present

persuasive reasons why, these documents should be disclosed.  As to this request for production, it does not appear that a privilege log would be appropriate.  Simms has noted that these documents were not her documents and consisted of a public record.  Thus, the Court hereby DENIES ARA's Motion to Compel with regard to Request for Production No. 3.

4.      **Request for Production No. 12: All documents related or referring to any action by you, other than the present action, against an employer.**

**Request for Production No. 13: An executed copy of the attached Employment Authorization.**

**Request for Production No. 14: All documents relating to any disputes, other than the present dispute, between you and an employer.**

**Request for Production No. 16: All documents relating to any complaints about your behavior made by employers, former employers, co-works, and former co-workers.**

**Request for Production No. 17: All documents relating to written warnings received by you about your behavior from employers or former employers.**

Requests for Production Nos. 12, 13, 14, 16, and 17 seek documents and information relating to Simms's other employment, both before her employment with ARA and following her termination.  ARA contends that these documents are relevant to Simms's claims regarding her excellent job performance because the evidence will actually suggest that Simms was terminated as a result of her communication style.  According to ARA, the documents sought in these requests are relevant to Simms's retaliation claims and her mitigation of damages.  Simms argues that she has provided ARA information regarding her compensation by her only employer following her termination from ARA.  Additionally, Simms asserts that all other evidence related to any prior employment is irrelevant and not subject to discovery in this suit.  She further asks that the Court

19

consider the effect of ordering discovery of her past employment records on her current efforts to obtain employment.

Considering the arguments from both parties, the Court will DENY ARA's Motion to Compel to the extent it seeks to discover documents or information regarding Simms's past employment. ARA stated at the hearing that it might use such evidence to impeach Simms should she testify about her excellent job performance history with ARA and her prior employers. However, this possibility amounts to nothing more than speculation at the moment. Simms has not made any claims regarding her job performance at jobs she held prior to her employment with ARA. Furthermore, her retaliation claim relates to her employment at ARA, not at any prior job. Thus, any information regarding her performance at prior jobs is not reasonably calculated to lead to the discovery of admissible evidence.

However, information regarding Simms's subsequent employment would be relevant and discoverable to the extent it shows Simms's mitigation of her damages from termination by ARA. Simms states that she has already produced information regarding her compensation with her only subsequent employer. ARA does not offer any other reasons why the information produced already would be insufficient. As such, the Court DENIES ARA's Motion to Compel regarding its Requests for Production Nos. 12, 13, 14, 16, and 17.

   5.    **Request for Production No. 15: All documents relating to any complaints or disclosures made by you to a governmental entity regarding an employer or former employer.**

        **Request for Production No. 21: All documents relating to any complaints or disclosures made by you to a governmental entity regarding Austin Radiological Association.**

20

**Request for Production No. 22:** All documents relating to any complaints or disclosures made by you to any third-party regarding Austin Radiological Association.

**Request for Production No. 24:** All documents relating to any complaints or disclosures made by you to a third-party regarding an employer or former employer.

**Request for Production No. 39:** All documents referring or relating to communications with any government entity or official regarding purported False Claims Act or TMFPA violations by Austin Radiological Association.

In this set of requests for production, ARA seeks documents relating to any complaints, disclosures, or communications Simms made to a government entity or a third party regarding ARA or a former employer. Specifically, Requests for Production Nos. 15 and 24 ask for all documents relating to any complaints or disclosures made by Simms to a third party or government entity regarding an employer or former employer. Requests for Production Nos. 21 and 22 seek documents relating to any complaints or disclosures made by Simms to a third party or government entity regarding ARA. Finally, Request for Production No. 39 asks for all documents relating to communications between Simms and any government entity or official regarding potential violations of the False Claims Act or TMFPA by ARA. ARA claims that Simms has failed to produce any documents responsive to these requests and has not yet provided a privilege log for these requests so that ARA may assess the applicability of any privilege. With regard to communications between Simms and the government, Simms argues that any such communication is protected by the attorney-client and work product privileges. Simms also asserts that any such communication with the government is subject to the common interest privilege, joint defense privilege, and joint prosecutorial privilege. According to Simms, these communications are privileged because the government is a real party in interest in *qui tam* cases.

21

Viewing these requests in light of the remaining claims in this case, the Court will DENY ARA's Requests for Production Nos. 15 and 24.  Simms's pending claims are her allegations with respect to ARA's wrongful retention of overpayments after May 20, 2009, as well as Simms's retaliation and wrongful discharge claim.  Whether Simms has made complaints or disclosures about a former employer to a third party or a government entity is irrelevant to the remaining claims in this case and not reasonably calculated to lead to the discovery of admissible evidence.  ARA has not offered any reasons why it believes such information would be relevant to Simms's remaining claims.  As such, the Court hereby DENIES ARA's Requests for Production Nos. 15 and 24.

Turning to the requests specifically focusing on ARA, the Court finds Request for Production No. 21, concerning all documents relating to any complaints and disclosures made by Simms to a government entity about ARA, to be impermissibly broad in scope.  ARA's Request for Production No. 21 seems to include information sought under the similar Request for Production No. 39, which is limited to the communications between Simms and a government entity or official regarding any potential violations of the False Claims Act or TMFPA.  By asking for "*all* documents" relating to any complaints or disclosures made by Simms, ARA has essentially made a request for communications that may be wholly irrelevant to this case.  The plain language of the request does not reasonably limit the information sought to the remaining claims in this case. Simms, however, has agreed to produce "all documents in her possession related to her complaints regarding [ARA] to OSHA."  *See* Dkt. No. 79 at 8.  Thus, the Court GRANTS ARA's Request for Production No. 21 to the extent it involves Simms's complaint regarding ARA to OSHA.  In all other respects, the request is DENIED.

22

Similarly, the Court GRANTS IN PART and DENIES IN PART ARA's Request for Production No. 22, which seeks all documents relating to any complaints or disclosures made by Simms to any third party regarding ARA.  Specifically, the Court GRANTS ARA's Request for Production No. 22 to the extent it seeks documents relating to any non-privileged complaints or disclosures made by Simms to a third party, *excluding government entities or officials*, regarding ARA *that is relevant to the remaining claims* in this case.  ARA may not seek documents relating to complaints or disclosures which are not reasonably related to Simms's allegation that ARA improperly retained government overpayments after May 20, 2009, or her retaliation claim.  Unlike the requests for documents given to government entities, a disclosure to third parties who are not government entities or officials generally cannot be deemed protected by the privileges asserted above.  Simms has made no showing that there are any privileges applicable to these communications.  Furthermore, such information is relevant or is reasonably calculated to lead to the discovery of admissible evidence as it relates, in particular, to Simms's retaliation claims.  As a result, the Court will GRANT IN PART and DENY IN PART ARA's Request No. 22.

Finally, ARA's Request for Production No. 39 asks for all documents relating to any communication between Simms and a government entity or officer regarding purported violations of the False Claims Act or TMFPA by ARA.  Simms asserts that these documents are protected by several privileges, including attorney-client, work product, common interest, joint defense, and joint prosecution.  After reviewing the relevant case law, the Court finds that such communications are protected by the work product and joint prosecution privileges.  Because the Court concludes that these privileges are applicable, it need not consider the other privileges asserted by Simms.

In *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680 (S.D. Cal. 1996), relator brought suit against the defendant under the False Claims Act, alleging that defendant had made inflated claims for payment on various government contracts.  The government chose not to intervene.  At issue were several documents regarding communications between relator's counsel and the government.  Although the court in *Burroughs* found that the documents were not protected by the attorney-client privilege, it ruled that such communications were protected by the work product privilege because relator and the government shared a "sufficient commonality of interests."  *Id.* at 686.

The facts in the current case are similar to those in *Burroughs*.  Here, Simms's remaining claim under the False Claims Act alleges that ARA has improperly retained government overpayments after May 20, 2009.  As in *Burroughs*, the government decided not to intervene.  The undersigned agrees with the court in *Burroughs* that relator and the government share sufficient common interests to assert the work product privilege.  Because Simms and the government share a common interest in the successful prosecution of this suit, documents submitted by Simms to the government that are prepared in the anticipation of litigation are protected.  FED. R. CIV. P. 26(b)(3).  The statutory language of the False Claims Act lends further support to this conclusion.  The text of the False Claims Act expressly says that a "person may bring a civil action [under the False Claims Act] for the person and *for the United States Government* . . . ."  31 U.S.C. § 3730(b)(1).  Furthermore, regardless of whether the government decides to intervene, it retains certain rights under the False Claims Act, including the right to be "served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts" if it so requests.  31 U.S.C. § 3730(b)(4).  Most importantly, the government may even "intervene at a later date upon a showing

of good cause." *Id.* Thus, "the government has a substantial interest in seeing that the litigation is successful against the defendants, whether or not it elects to intervene in the action." *U.S. ex rel. Burroughs*, 167 F.R.D. at 686. In this case, the government continues to retain the rights provided in 31 U.S.C. § 3730 and continues to have an interest in the success of Simms's case. Consequently, the Court finds that communications between Simms and the government regarding potential violations of the False Claims Act or the TMFPA are protected by the work product privilege and not subject to discovery. Accordingly, the Court DENIES ARA's Request for Production No. 39. However, Simms is ordered to produce a privilege log concerning these communications to ARA to allow ARA to assess the applicability of any privileges asserted.

In summary, the Court DENIES ARA's Requests for Production Nos. 15, 21, 24, and 39. The Court GRANTS in part and denies in part ARA's Request for Production No. 22 to the extent it seeks documents relating to any non-privileged complaints or disclosures made by Simms to a third party, *excluding government entities or officials*, regarding ARA *that is relevant to the remaining claims* in this case.

**6.      Request for Production No. 26: All documents and things regarding any investigation you have made related to purported violations of the False Claims Act.**

In its Request for Production No. 26, ARA seeks documents and things regarding any investigation by Simms of violations of the False Claims Act. Although Simms asserts that she has produced all responsive, non-privileged documents, ARA contends that none of the documents presented were responsive to this request.

First, the Court notes that to the extent this request seeks documents unrelated to *ARA's* alleged violation of False Claims Act, such documents are irrelevant and not discoverable. This

lawsuit concerns ARA's alleged violation of the False Claims Act and thus a request that seeks "*all* documents and things regarding *any* investigation" is impermissibly broad and is not reasonably calculated to lead to the discovery of admissible evidence.  However, to the extent Simms possesses any documents regarding *ARA's* potential violation of the False Claims Act that Simms believes is protected by privilege, the Court orders Simms to produce a privilege log to ARA so that ARA may assess the applicability of any privileges asserted.  As such, the Court DENIES ARA's Motion to Compel with regard to Request for Production No. 26.

> 7.    **Interrogatory No. 8: Identify any disputes including disciplinary actions or incidents of complaints regarding your management or communication style you have had with employers other than Austin Radiological Association and, in doing so, identify the persons most knowledgeable regarding these disputes and complaints.**

In Interrogatory No. 8, ARA seeks information about Simms's interactions with her employers other than ARA.  ARA claims that "[a]ny incidents regarding disputes and disciplinary actions from other employers for reasons similar to the basis for her termination from ARA are directly relevant to her claims and to ARA's defenses." *See* Dkt. No. 76 at 6–7.  Simms argues that requesting this information amounts to a fishing expedition and that such information is not relevant to the current lawsuit.

As addressed previously in Section III.B.4, the information regarding Simms's job performance at any prior places of employment is not reasonably calculated to lead to the discovery of admissible evidence.  Again, Simms has made no claims about her job performance at any job prior to her employment with ARA.  Simms's retaliation claims are in connection with her employment at ARA.  Thus, the Court will DENY ARA's Motion to Compel to the extent it seeks

to discover information about incidents or disciplinary actions regarding Simms's management or communication style from other employers.

8.   **Interrogatory No. 13: Fully describe all communications between you and any federal agency at any time regarding any purported violations of OSHA by Austin Radiological Association. Your response should include, for each communication, the type of communication (e.g., face-to-face conversation, phone call, fax, email, text, voice mail, etc.), the purpose of communication, the persons involved, and the substance of what each person said.**

ARA's Interrogatory No. 13 requests information fully describing all communications between Simms and any federal agency at any time regarding potential violations of OSHA by ARA. Although Simms appears to assert that ARA is aware of these disclosures, ARA claims that it is unaware of any such communication regarding ARA's potential violations of OSHA and consequently requests that these communications be disclosed. Simms argues that such evidence is not relevant and is not likely to lead to the discovery of admissible evidence. However, Simms responds that she will produce to ARA "all documents in her possession related to her complaints regarding [ARA] to OSHA, including those documents she received from OSHA as a result of a request to OSHA pursuant to the Freedom of Information Act."

Given Simms's production of documents concerning this interrogatory, the Court will GRANT IN PART and DENY IN PART ARA's Motion to Compel with regard to Interrogatory No. 13. Simms is ordered to amend her answer to Interrogatory No. 13 to disclose whether she had communications with federal agencies regarding any purported violations of OSHA by ARA. However, Simms is not required to "fully describe" these conversations with the specificity requested in the interrogatory. Should ARA believe that any further details concerning Simms's communications with other federal agencies about potential violations of OSHA by ARA are relevant, they may be inquired into during depositions.

27

### III.  CONCLUSION

In accordance with the preceding analysis and discussion, the Court hereby DENIES AS MOOT Defendant Austin Radiological Association's Motion to Strike Relator's Witness/Exhibit/Expert List (Dkt. No. 62).

The Court further GRANTS IN PART and DENIES IN PART Relator Katherine J. Simms's Motion to Compel (Dkt. No. 65).

Additionally, the Court GRANTS IN PART and DENIES IN PART Defendant Austin Radiological Association's Motion to Compel Discovery Responses (Dkt. No. 76).

Finally, the Court hereby ORDERS the Parties to serve the additional production ordered no later than April 15, 2013, or such other date that may be mutually agreed upon by the parties.

SIGNED this 18th day of March, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE