IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, *ex rel.* | § § § | |
| KATHERINE J. SIMMS, Relator, | § § § § | |
| V. | § § | A-10-CV-914-AWA |
| AUSTIN RADIOLOGICAL ASSOC. Defendant. | § § § | |

## ORDER

Before the Court is Relator's Motion for Leave to Join an Additional Party and Amend the Complaint (Dkt. No. 121); Defendant Austin Radiological Association's Response in Opposition (Dkt. No. 122); Relator's Reply in Support (Dkt. No. 125); and Defendant Austin Radiological Association's Sur-Reply (Dkt. No. 126). Having considered the parties' Motion, Response, Replies, and the arguments contained therein, the Court enters the following Order.

### I.  BACKGROUND

The general background facts of the instant case were detailed in a previous order. *See* Dkt. No. 93 at 2–3. Relator Katherine J. Simms's ("Simms") instant motion arises from events that occurred during a discovery hearing before the Court that took place over the course of two days, beginning on May 24, 2013, and concluding on May 31, 2013. The hearing was held, in part, to resolve a discovery dispute between the parties over whether Defendant Austin Radiological Association ("ARA") had improperly redacted all references to an affiliated entity—later revealed to be ARA Austin Imaging, Inc. ("ARAI")—from documents produced in the course of discovery. ARA had contended that this Court's previous discovery order on March 18, 2013, permitted ARA

to redact "non-responsive or irrelevant financial data outside of the reasonable time frame or information about entities that are not parties to this litigation." Dkt. No. 98 at 8. In the argument during the hearing, the Court opined that the March order did not allow ARA to redact information based on "relevance" objections. Dkt. No. 93. In court during the second day of the hearing, ARA disclosed on the record the name of the affiliated entity while explaining its reasoning behind the redaction. After the hearing, and after conducting an *in camera* review of a sample of the documents in dispute, the Court concluded that ARA had improperly redacted a variety of information—including ARAI's name—from records it had produced, and ordered ARA to produce the documents in unredacted form. *See* Dkt. No. 113.

Simms now seeks to join ARAI as an additional defendant to this lawsuit. ARA objects, contending that such joinder is prohibited by the public disclosure bar of the False Claims Act, insofar as ARAI's name was publicly disclosed during the May hearing.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). The Fifth Circuit has further counseled that leave to amend should be granted freely, "absent some justification for refusal." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). Whether a motion to amend should be granted is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc . . . ." *Id.*

As noted, when reviewing a motion to amend pleadings, a court may consider the futility of the amendment. *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996). To determine "futility," the Fifth Circuit applies " 'the same standard of legal sufficiency as applies under Rule 12(b)(6).' " *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). The Fifth Circuit has also recognized as futile amended claims over which a court would have no jurisdiction. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222–23 (5th Cir. 1989) (leave to amend adding Federal Tort Claims Act allegations would be futile where the plaintiff failed to exhaust administrative remedies, a jurisdictional prerequisite to FTCA suits). However, " 'a challenge under the F[alse] C[laims] A[ct] jurisdictional bar is necessarily intertwined with the merits' and is, therefore, properly treated as a motion for summary judgment." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (quoting *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004)). Under this rubric, ARA "must first point to documents plausibly containing allegations or transactions on which [Simms's] complaint is based." *Jamison*, 649 F.3d at 327. To survive ARA's challenge, Simms's "must produce evidence sufficient to show that there is a genuine issue of material fact as to whether [her] action was based on those public disclosures." *Id.* In this review, evidence is viewed in the light most favorable to Simms. *Id.*

### III. ANALYSIS

As noted, the parties' fundamental disagreement on the motion to add ARAI concerns whether Simms is precluded from doing so by the False Claims Act's ("FCA") public disclosure bar set forth in 31 U.S.C. § 3730(e)(4)(A). More specifically, the parties dispute whether a public disclosure occurred with regard to ARAI, thereby triggering the requirement that Simms be the

3

"original source" of the information. 31 U.S.C. § 3730(e)(4)(A). To support her motion, Simms points to Federal Rule of Civil Procedure 15 and notes that it was ARA's improper redaction of documents that resulted in the discovery hearing during which ARAI's name was revealed. Dkt. No. 125, ¶ 1. Simms submits that no public disclosure occurred with regard to ARAI because no discovery documents were publicly filed with the Court; rather, the documents at issue were only produced for the Court's *in camera* review. *Id.* ¶ 3. Furthermore, even acknowledging that ARAI's name was revealed during the Court's discovery hearing, Simms contends that the simple disclosure of the existence of the ARAI entity and its name was not a public disclosure of the allegations or transactions that she challenges under the FCA. *Id.* ¶ 4. ARA argues that ARAI is not a proper party because ARAI "does not own any imaging centers, does not perform imaging services, and does not do any billing to government entities." Dkt. No. 122, ¶ 1. ARA further submits that the disclosure of ARAI's name during the May 31, 2013, hearing constituted a public disclosure for purposes of the FCA and Simms' admission during the hearing that she did not know about ARAI demonstrates that Simms is not the "original source" of the allegations. Dkt. No. 122, ¶¶ 5–8. Additionally, ARA contends that even if ARAI's existence were disclosed in discovery documents only, such information would still constitute a "public disclosure" under the FCA. Dkt. No. 126.

**A.     Consideration of *Foman* Factors**

As an initial matter, the Court notes that most of the general factors the Supreme Court in *Foman* directed trial courts to consider when deciding whether to grant leave to amend clearly weigh in Simms's favor. Simms seeks leave to add ARAI as a party to this lawsuit because she contends that ARAI engaged in the same retention of overpayments to government health care programs that ARA participated in. There is no evidence of undue delay by Simms nor is there any evidence that

4

Simms is seeking to amend in bad faith or as a result of dilatory motive. This is also not a situation where Simms has failed to cure a deficiency despite multiple opportunities. Throughout the course of this lawsuit, many of the disagreements between the parties have stemmed from the parties' protracted discovery disputes. The Court has already entered three orders relating to discovery disputes, or for reconsideration of those orders. *See* Dkt. Nos. 93, 97, 113. Putting aside the question of whether Simms's request to add ARAI as an additional party is barred by the public disclosure bar of the FCA (which will be considered *infra*), it was ARA's improper redaction of references to ARAI in its document production that delayed Simms's request to add ARAI as a party to this suit. Because ARA itself was the cause of any delay in Simms learning of ARAI's existence, that delay is not a reason to deny leave to amend under Rule 15.

Furthermore, ARA has presented no argument contending that permitting Simms to add ARAI as a party to this suit would result in undue prejudice to it. Although ARA notes that it reserves the right to dispute the factual inaccuracies in Simms's motion and Second Amended Complaint, Dkt. No. 122, ¶ 1, it has not submitted any argument or evidence disputing the facts set forth in Paragraph 3 of Simms's motion. Most importantly, the current information before the Court indicates that ARA and ARAI are closely related entities and that several individuals serve in various capacities within both ARA and ARAI. Dkt. No. 121, ¶ 3. Consequently, at this point it does not appear that granting Simms leave to amend her complaint would result in undue prejudice to ARAI.

**B.     Whether the Public Disclosure Bar of the FCA Applies to ARAI**

ARA's contention that permitting Simms to add ARAI as an additional party to this suit would be futile because the Court lacks jurisdiction requires more scrutiny. As noted previously, the parties dispute whether ARA's counsel's disclosure of ARAI's name during a discovery hearing

regarding information redacted from discovery documents constitutes a "public disclosure" for purposes of the FCA. The public disclosure provision of the FCA provides, in relevant part, that

> (4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit has counseled that courts should apply a three-prong test to determine whether a relator's qui tam cause of action is barred by the public disclosure bar in the FCA. *See, e.g.*, *Stennett v. Premier Rehabilitation, LLC*, 479 Fed.Appx. 631, 634 (5th Cir. 2012) (construing the public disclosure bar following the 2010 amendments and citing *Graham Cnty. Soil & Water Conservation Dist. v. United States*, 559 U.S. 280 (2010)); *see also Jamison*, 649 F.3d at 327 (analyzing the public disclosure provisions prior to the 2010 amendments). In particular, courts should ask "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *Jamison*, 649 F.3d at 327 (citing *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995)). Courts need not apply this test rigidly. *Id.* More specifically, the Fifth Circuit has recognized that "combining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the

'allegations or transactions' that must be publicly disclosed in step one." *Id.* In other words, "for the public-disclosure bar to apply, the publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint, because that is all that is needed for the action to be 'based on' the publically [sic] disclosed allegations." *Id.* "When specifics are alleged, it is crucial to consider whether the disclosures correspond in scope and breadth." *Little v. Shell Exploration & Prod.*, 690 F.3d 282, 293 (5th Cir. 2012).

In evaluating whether a relator's suit is barred by the public disclosure bar of the FCA, several district courts in this circuit have looked to the influential case of *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994), in which the court emphasized that for the purposes of determining whether the public disclosure bar applied, it was the public disclosure of transactions or allegations and not merely of information, that was relevant. *See, e.g.*, *United States ex rel. Colquitt v. Abbott Lab.*, 864 F.Supp.2d 499, 519 (N.D. Tex. 2012); *United States ex rel. Smart v. Christus Health*, 626 F.Supp.2d 647, 653–54 (S.D. Tex. 2009); *United States ex rel. Johnson v. Shell Oil Co.*, 33 F.Supp.2d 528, 533–34 (E.D. Tex. 1999). To illustrate its analysis, the *Springfield* court employed a mathematical equation: $X + Y = Z$, where "Z represents the *allegation* of fraud and X and Y represent its essential elements." *Springfield*, 14 F.3d at 654 (emphasis added). "In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed . . . ." *Id.* As the *Springfield* court further explained,

> [i]n terms of the mathematical illustration, when X by itself is in the public domain, and its presence is essential but not sufficient to suggest fraud, the public fisc only suffers when the whistle-blower's suit is banned. When X and Y surface publicly, or when Z is broadcast, however, there is little need for qui tam actions, which would tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue.

*Id.* Put another way, the public disclosure bar only applies whenever an allegation (Z) or an entire transaction (X and Y) are disclosed publicly. *See Smart*, 626 F.Supp.2d at 653.

1. **Disclosure of ARAI's Existence During the Discovery Hearing**

The analysis in *Springfield* is particularly instructive in resolving this dispute. ARA's primary contention is that the disclosure of the existence of ARAI during a discovery hearing constituted a public disclosure under the FCA. ARAI's name was disclosed during the course of ARA's counsel's explanation for why certain references to an entity were redacted in ARA's document production. ARA's counsel explained that another entity, ARA Management Services Organization ("MSO"), did the billing for ARA as well as ARAI. Dkt. No. 112 at 38. The representations at the discovery hearing merely disclosed that the entity being redacted from ARA's discovery documents was ARAI. The disclosure of ARAI's name and existence was not a disclosure of any particular allegation or transaction. Furthermore, the disclosures during the May 2013 hearing do not correspond in scope and breadth with the allegations set forth in Simms's Second Amended Complaint. What Simms now alleges—that ARAI also engaged in the fraudulent scheme of failing to return government overpayments—is much more than simply the existence of the entity. The fact that ARA has a business structure consisting of multiple, related entities does not disclose anything about the overpayments and retentions that are the essence of Simms's lawsuit.

2. **Do Discovery Documents Alone Constitute a Public Disclosure Under the FCA?**

In its sur-reply, ARA also argues that even if ARAI's name had not been redacted from the document production, or if Simms did not base her argument on the in-court statements, but relied instead on the documents produced in unredacted form after the Court's order, the production of the documents at that time would have constituted a "public disclosure" under the FCA. Dkt. No. 126,

¶ 2. This question is more difficult because it requires the Court to analyze a situation in the abstract, i.e., whether information contained in documents exchanged solely in discovery, in a case governed by a protective order, is a "public disclosure" under the FCA. What makes this an "abstract" question is that it is unclear precisely which documents ARA contends contain the "public disclosures" of ARAI's existence and its relationship to ARA. As noted earlier, to obtain dismissal on this type of argument, ARA has to "point to documents plausibly containing allegations or transactions on which [Simms's] complaint is based." *Jamison*, 649 F.3d at 327. Because ARA has failed to do so, the Court declines to hold, in the abstract, that information disclosed solely in discovery in a case governed by a protective order constitutes a public disclosure under the FCA.

Even if the Court had the documents to allow it to address the issue, it is not persuaded that the cases relied on by ARA support ARA's contention that all information produced during discovery constitutes a "public disclosure." First, neither the decision in *Jamison* nor *Wright* considered whether information disclosed only in discovery constituted a public disclosure. With regard to *Jamison*, it appears that the court was simply evaluating the relator's complaint against a series of reports that had been published by government entities. *Jamison*, 649 F.3d at 328 n.10. In *Wright*, the reference to a 1990 Minerals Agreement that was the subject of contention was contained in a responsive filing, not discovery. *Wright*, 456 Fed.Appx. at 349. In *Kreindler*, a law firm that had previously represented the widow of a United States Army warrant officer in a wrongful death action filed a subsequent FCA suit, alleging that the defendant had presented false or fraudulent claims to the government for helicopters that were not built to contractual specifications. *Kreindler*, 985 F.2d at 1152. All of the information upon which the relator law firm based its FCA claims was filed with the district court in a previous, unrelated case. *Id.* at 1157–58.

9

Consequently, the court concluded that "the information was publicly disclosed because it was available to anyone who wished to consult the court file." *Id.* at 1158. By contrast, there are no documents that have been filed in this case, other than Simms's Second Amended Complaint that is attached to her instant motion, which allege that, along with ARA, ARAI also engaged in the same fraudulent scheme of wrongful retention of government overpayments. Thus, there has been no public disclosure with regard to the allegations or transactions against ARAI. Additionally, in *Stinson*, the Third Circuit's holding is narrower than ARA contends. In particular, the court only held that "disclosure of discovery material to a party *who is not under any court imposed limitation as to its use* is a public disclosure under the FCA." *Stinson*, 944 F.2d at 1158 (emphasis added). It did not address a situation where, as here, the Court has entered a protective order, setting limitations on the use of information exchanged in this case. *See* Dkt. No. 32. Finally, the citation to *Pentagen* is unconvincing. The FCA defendant in *Pentagen* claimed that the relator's FCA complaint was based upon discovery obtained from two previous, non-FCA cases. *Pentagen*, 1995 WL 693236 at *5. One of those sources was the defendant's summary judgment motion (and the documents attached thereto) in a previous case. *Id.* The other was the deposition of a third-party's former official. *Id.* Yet, it is unclear whether the discovery documents in the two previous cases were subject to protective orders. Consequently, the Court does not find the cases cited by ARA to support the global contention that documents disclosed in discovery always constitute a "public disclosure" for FCA purposes.

In this instance, the Court's analysis and decision is also informed by the fact that the parties have presented very little, if any, information concerning ARAI to the Court. As mentioned previously, ARA has not pointed to any discovery documents upon which it claims Simms is relying

for her FCA claims against ARAI. Without any such documents, the Court is unpersuaded that the mere disclosure of ARAI's existence constitutes a public disclosure under the FCA. Furthermore, the Court is also guided by the goals of the FCA. As the Fifth Circuit has recognized, "[t]he purpose of [the] jurisdictional bar is to accommodate the primary goals of the False Claims Act: (1) promoting private citizen involvement in exposing fraud against the government and (2) preventing parasitic suits by *opportunistic late-comers who add nothing to the exposure of fraud*." *Reagan*, 384 F.3d at 174 (emphasis added). Here, Simms has alleged a specific scheme of failing to return government overpayments against her former employer. Simms makes these allegations based on her own investigation and review of several payment-adjustment lists she ran while employed at ARA. In her proposed amended complaint, she alleges that a closely-related entity, ARAI, has engaged in the same scheme. Unlike in *Jamison*, this is not a case where the relator has listed a large number of potential defendants with the hope that one will be liable for the scheme alleged. *Jamison*, 649 F.3d at 331. When compared to *Kreindler* and *Stinson*, this is also not a case where the relator used information from a previous, unrelated suit to bring FCA claims against a defendant. *Kreindler*, 985 F.2d at 1157–58; *Stinson*, 944 F.2d at 1151. Instead, based on her own investigation Simms alleges that a specific entity, "ARA," has engaged in a specific scheme whereby it wrongfully retained government overpayments. The fact that what is publicly known as "ARA" actually consists of multiple entities does not lessen her contribution to exposing a potential fraud against the government.

     Finally, the Court notes that adopting ARA's position in this instance would actually work at counter-purposes to the FCA, as it would create a means by which FCA defendants could orchestrate events with the intention of limiting their liability. ARA's argument would mean that

FCA defendants could prevent claims against them by intentionally withholding information on a claim during discovery, then disclosing the information in court when its non-disclosure is challenged.  Although the Court has no reason to believe that ARA intended to use the public disclosure bar in such a fashion here, adopting ARA's argument would have that effect.  All qui tam relators will need discovery to build their case.  If the Court adopted ARA's position, an FCA defendant would be able to exploit the relator's need to conduct discovery by strategically disclosing relevant information in open court during a proceeding in the case, with the goal of arguing that the public disclosure in court bars any claim based on that information.  The public disclosure bar was not intended to create a defense to FCA claims; rather, as the Fifth Circuit has stated, the public disclosure bar seeks to discourage the filing of parasitic lawsuits by plaintiffs.  *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009).

## IV.  CONCLUSION

For all of the reasons discussed above, the Court hereby **GRANTS** Relator Katherine J. Simms's Motion for Leave to Join an Additional Party and to Amend the Complaint (Dkt. No. 121). The Clerk is directed to file the document marked "Exhibit A" to Dkt. No. 121 in the records of this case.

SIGNED this 23rd day of December, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE