IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and § | | |
| STATE OF TEXAS, *ex rel.* § | | |
| § | | |
| KATHERINE J. SIMMS, § | | |
|     Relator, § | | |
| § | | |
| V. § | A-10-CV-914-LY | |
| § | | |
| AUSTIN RADIOLOGICAL ASSOC., and § | | |
| ARA/ST. DAVID'S IMAGING, L.P., § | | |
|     Defendants. § | | |

## ORDER

Before the Court is Relator Katherine J. Simms's Motion to Compel and for Additional Relief ( Dkt. No. 155); Defendants Austin Radiological Association and ARA/St. David's Imaging, L.P.'s Response (Dkt. No. 161); and Relator Katherine J. Simms's Amended Motion to Compel and for Additional Relief (Dkt. No. 162). The District Court referred the above-motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court conducted a hearing on the above-motions on March 17, 2014. After reviewing the Parties' arguments at the hearing, the Parties' briefs, as well as the entire case file, the undersigned issues the following order.

### I. GENERAL BACKGROUND

The relevant background in this case was detailed in a previous order. *See* Dkt. No. 93. Relator Katherine J. Simms's ("Simms") current motion represents at least the sixth discovery-related motion in this case. *See* Dkt. Nos. 62, 65, 76, 94, and 98. Despite previous encouragement

to resolve their discovery issues without the intervention of the Court, the Parties are once again requiring the Court to resolve discovery issues.  The Court hopes this is the last such motion in this case.

## II. ANALYSIS

In Simms's Motion to Compel,[1] she generally contends that Defendants Austin Radiological Association and ARA/St. David's Imaging, L.P. (collectively "ARA"), continue to dodge their discovery obligations.  Dkt. No. 162.  At the hearing, Simms presented several discrete categories of information she contends remain in dispute.  Those are: (1) ARA has repeatedly refused to produce full and complete answers to her discovery requests, based on objections to Simms's definitions of the terms "affiliates," "overpayments," "identify," "government payors,;" (2) ARA improperly claimed attorney-client privilege for documents responsive to Request for Production 58; (3) ARA has not properly responded to Request for Admissions 7-13; (4) ARA failed to provide sufficient answers to Interrogatories 1, 2, 4, and 6-9.; and (5) raising an issue first raised last summer, ARA's production of billing data has been insufficient to permit Simms' expert to reach conclusions regarding overpayments, and thus Simms seeks access to the supporting documentation for each transaction involving an overpayment, including the Explanation(s) of Benefits.[2]

---

[1] Simms stated at the hearing that the only purpose of her Amended Motion to Compel (Dkt. No. 162) was to correct incomplete exhibits in her original Motion to Compel (Dkt. No. 155).  In particular, the Amended Motion to Compel contains ARA's complete responses to her Requests for Admissions and Interrogatories.  Because the substantive portions of Simms's Motion to Compel and her Amended Motion to Compel do not differ, all references made by the Court to Simms's motion will be to her Amended Motion to Compel (Dkt. No. 162).

[2] ARA's expert report criticized the calculations made by Simms's expert, noting that an analysis of the charge, payment, and adjustment data is insufficient for determining the resolution of a credit balance or the identification of an overpayment.  See Dkt. No. 161, Exhibit 9 at 11.  At the hearing, Simms contended that her expert should be provided access to these documents so that

ARA strongly disputes Simms's characterization of its conduct during discovery. ARA argues that it has diligently worked to respond to Simms's requests "in a manner consistent with the Rules and within the time frames required." Dkt. No. 161 at 1. With regard to Simms's complaints relating to ARA's objections to Simms's definitions of the terms "affiliates," "overpayments," "identify," and "government payors" as well as documents pertaining to ARA/St. David's Imaging, L.P. ("SDI"), ARA states that it has not withheld any documents based on these objections, and that all responsive documents have been produced notwithstanding its objections. *Id.* at 2-3. As for the remaining issues, ARA contends that it has either already produced the answers Simms seeks through other documents, such as ARA's expert report, or that Simms has never requested the information prior to filing her Motion to Compel.

**A.      Disputed Definitions**

As noted previously, the parties dispute the precise meaning of the terms "affiliates," "overpayments," "identify," "government payors," and all variations of these terms used in discovery. This disagreement is indicative of many of the parties' arguments over discovery in this case. The parties continue to conflate issues relating to discovery with issues about liability. In any event, ARA represented at the hearing that although it objected to Simms's definitions of these terms, it was not withholding any documents or information based on these objections. Given that ARA has already produced the documents and information at issue, the Court **OVERRULES** ARA's objections. Similarly, should there be any documents in the future that ARA seeks to withhold based upon its objections to Simms's definitions of the terms "affiliates," "overpayments,"

---

she can obtain a more accurate picture of ARA's billing and finances relevant to this suit. ARA strongly objected to the request, and contends the production would be overly burdensome, and it is too late to just now be asking for this information.

"identify," "government payors," and all variations of these terms used in discovery, the Court hereby **OVERRULES** ARA's objections.

**B.      Request for Production No. 58**

In this request, Simms asks ARA to produce:

> ARA's communications concerning the subject matter of ARA's policy number 2718 on "Credit and Small Balances" (exhibit 10 attached to Relator's Complaint) including but not limited to information concerning the motivations to discuss, draft, finalize or adopt such a policy, drafts and any revisions or comments that led to the final version adopted as policy number 2718, discussion or dialog concerning any of the content, definitions, directives, or procedures contained in the policy, any efforts to implement, monitor, follow-up, or otherwise ensure that the policy was being follow, and the identity of any individuals involved in any of the foregoing activities.

At the hearing, the parties disputed whether ARA had provided a sufficient response to Simms's Request for Production 58. ARA's initial response indicated that some of the documents were protected by the attorney-client privilege and two documents provided to the Court during the hearing showed that ARA had claimed the privilege and redacted portions of documents apparently responsive to Request No. 58. Simms argued that in the course of conducting depositions, none of ARA's representatives stated that they relied on an attorney's advice in drafting or adopting policy number 2718, and ARA has not raised an "advice of counsel " defense. Consequently, Simms asks that these documents either be produced or submitted to the Court for an *in camera* review if ARA still seeks the protection of the attorney-client privilege. In response, ARA directed the Court to the policy and reiterated that it had been produced and was being used in depositions.

ARA's arguments during the hearing seem to indicate that it believes it had satisfied its obligations with regard to Request for Production No. 58 by producing policy number 2718. However, a plain reading of Request for Production No. 58 clearly demonstrates that it requested

additional information outside of policy number 2718.  The request seeks "ARA's communications concerning the subject matter of ARA's policy number 2718" and describes the types of communications being sought.  Thus, the scope of Request for Production No. 58 is broader than ARA contends.  However, it was not clear which precise documents responsive to Request No. 58 had been redacted.

Accordingly, as stated at the hearing, the Court hereby **ORDERS** that on or before **Tuesday, March 18, 2014**. Simms submit a list of the documents she believes are responsive to Request for Production No. 58, and were redacted in whole or in part based upon attorney-client privilege .[3] ARA is **ORDERED** to either produce to Simms those documents in unredacted form, or, in the event ARA believes those documents were properly redacted, submit the unredacted documents for the Court's *in camera* review by **Friday, March 21, 2014**.[4]  Further, to the extent that ARA believes that Simms has over-identified redacted documents beyond those that were produced in response to Request No. 58, ARA may also file a pleading making that argument, also no later than **Friday, March 21, 2014**.

**C.    Request for Admissions**

The dispute over ARA's responses to Simms's Requests for Admission 7-13 stems largely from the parties' disagreement over the definitions of the terms used in those admissions. Following discussion at the hearing, ARA represented that it would amend its responses and answer "Denied" to each of these Requests for Admissions, on behalf of both defendants.  Additionally, ARA also

---

[3] Simms has already filed this document.  *See* Dkt. No. 165.

[4] Documents submitted for *in camera* review should be submitted in a sealed envelope with the style of the case on the outside of the envelope and with language indicating that the documents are submitted under seal for the Court's review *in camera* and are to be opened by the Court only.

stated that it would amend its answers to Simms's Request for Admission Nos. 1-6 to include responses for SDI. Because all issues relating to Simms's Requests for Admission have been resolved, the Court will **DENY AS MOOT** her Motion to Compel to the extent she seeks relief pertaining to her Requests for Admission.

D.     Interrogatories

   1.     Interrogatory No. 1

In this interrogatory, Simms asks if ARA has "identified or discovered any overpayments due any government payor, and has refunded, returned, paid, or credited any amounts to such government payor(s)" between November 29, 2004, and September 22, 2011, and if so, (a) what the total amount identified and total amount refunded was, and (b) what documents concern these overpayments and refunds. When broken down, the interrogatory asks several questions (all tied to the time period described above):

- Did ARA identify overpayments due to government payors?
- Did ARA refund any overpayments it identified?
- What was the total amount of overpayments identified?
- What was the total amount refunded?
- What documents relate to all of the above?

ARA's response includes objections to the terms "overpayment" and "government payors," both of which the Court has overruled. ARA also states that the burden of obtaining responsive information is the same for both parties, and that it will or has produced records from which the response can be obtained. It also states that it was producing with its response "an itemization of refund checks that are available in the accounts receivable system processed by ARA" during the time period, and further identifies specific responsive documents or data previously produced. Finally, ARA states that it will supplement the response through its expert disclosures when those are made. Simms

objects to this response because it does not include an answer to the questions asked, and further because she disagrees that she and ARA are equally able to obtain the information from the data ARA has made available.

With regard to the questions identified in the first two bullet points above, the Court agrees with Simms, and **ORDERS** that ARA state whether it identified or discovered overpayments due to government payors, and whether it refunded any amounts to government payors, during the time identified. With regard to the third and fourth bullet points, requesting ARA to state the amounts identified and the amounts refunded, the Court agrees with ARA that the burden of determining this information is equal, as it requires an analysis of the documents and data ARA has made available, and there is no evidence before the Court that ARA is any more able to search the data than Simms is. However, the Court will **ORDER** that ARA supplement as it promised it would now that its experts have produced reports, and state the amounts, if any, that ARA's experts have calculated for the overpayments identified, and refunded during the time period stated. Finally, with regard to the request (summarized in the fifth bullet point above) that ARA identify documents "concerning identifications or discoveries, and refunds, returns, payments or credits . . . including any documents showing the calculations of such amounts," the Court again agrees with ARA. Given the number of claims and alleged overpayments that appear to be at issue in this case, identifying each and every document that "concerns" these issues would be an overwhelmingly difficult task, and could be done by either party as easily as by the other.

    2.    **Interrogatory No. 2**

In this interrogatory, Simms inquires whether, during the same time period addressed in the first interrogatory, ARA "analyzed or reviewed the policies and procedures" it used to determine

issues related to refunding overpayments to government payors, and if so, who was involved in these reviews or analyses, when they took place, and documents "concerning the results of such review or analysis." After repeating the objections to terms that have been overruled, and to responding for any time period prior to January 1, 2007, ARA states that the burden of gathering this information is the same for both parties, and identifies specific documents within which it contends the information can be found. Simms objects to this response as incomplete. The Court agrees.

Clearly ARA is in a better position than Simms to know whether it conducted a review or analysis of its procedures in handling overpayments from government payors, and if so, which of its employees were involved in the reviews. Accordingly, the Court **ORDERS** that ARA state whether it engaged in any such reviews or analyses of its policies and procedures, and if so, who was involved in those discussions, and when they took place. With regard to the identification of documents, the Court also agrees that ARA is in a better position to know which of its documents, if any, "concern" the results of these reviews or analyses, and **ORDERS** ARA to identify such documents. The Court emphasizes that it is making this finding because it finds that Simms has requested a narrow class of documents—only those which concern *the results* of the reviews, as opposed to every document which relates in some way to the reviews.

    **3.**    **Interrogatory No. 4**

This interrogatory asks:

> If ARA conducted any audit, review, or analysis to determine whether ARA owed funds to any government payors as a result of an overpayment either on or after the effective date of FERA (May 20, 2009), or on or after the effective date of PPACA (March 23, 2010), identify the person(s) who performed the audit, review, or analysis, the date(s) of same, the documents concerning the results, the resulting amount(s) owed, if any, to each government payor, and the date(s), if any, on which such funds were refunded, returned, paid or credited to any government payors.

ARA objects to the same terms as the prior two interrogatories, which, again, the Court has overruled. It further states that it does not conduct such audits or reviews, but that its employees regularly analyze credit balances to determine amounts to be refunded. ARA states that gathering the results of that ongoing credit balance analysis into a single response would be equally difficult for both parties, and identifies a series of documents and data in which the information may be able to be found. Finally, it again points to its expert reports as another potential source of the information. Simms objects that, despite her expert's expenditure of a substantial amount of time, she has been unable to obtain the information from ARA's data.

There are two ways to read this question. One asks whether ARA has conducted an audit, review, or analysis of whether it owed funds to government payors as a result of overpayments, where the overpayments were made "on or after" May 20, 2009, or March 23, 2010 (that is, the focus is on the date of the overpayment). The other construction asks whether ARA conducted an audit, review, or analysis of whether it owed funds to government payors for overpayments, where the *review* was conducted "on or after" May 20, 2009, or March 23, 2010 (here, the focus is on the date of the review, not the date of the overpayment). From the discussion at the hearing, and from the context of this dispute, the Court believes that the proper construction is the second. In essence, Simms is seeking to determine whether the passage of either FERA or the PPACA sparked ARA to conduct overpayment analyses separate and apart from the ongoing credit balance reviews it contends it was already doing. It appears from ARA's response that it is stating that it did *not* do any such "non-routine" analyses or reviews. To be clear, however, the Court will **ORDER** that ARA confirm that it did not conduct any such "non-routine" audits, reviews or analyses, and, if in fact

ARA *did* conduct such any such audits, reviews or analyses, then ARA shall provide the additional information requested in the interrogatory.

    4.    **Interrogatories 6-8**

These three questions ask for the identical information with regard to three separate categories of payors—"private third party insurance carriers," "government payors," and "self-paid patients." The information sought with regard to each of the three payors is: "the average, median, and mean number of days between each of . . . ARA's receipt of an overpayment, ARA's identification or discovery of an overpayment, and ARA's refund of an overpayment, if any. . . ." ARA objects to the requests concerning insurance payors and self-paid patients on the grounds of relevance, and objects to all three requests on the grounds of overbreadth and burden. Further, with regard to the interrogatory focused on government payors, ARA contends that Simms can determine the information as easily as ARA can from the data it has produced to Simms. Finally, it states that it may supplement its response once its expert completes his or her work. Simms responds that the information about non-government payors is relevant, as it will be probative of how quickly ARA is capable of "working" a credit balance and determining if an overpayment requires a refund.

While the Court agrees that a comparison of ARA's average, mean, and median times between receiving a payment, discovering it was an overpayment, and making a refund, for all three categories of payors might be probative of how quickly ARA was capable of finding overpayments, which in turn is of potential relevance to the case, this does not mean the information is discoverable. First, it appears clear that these figures are not statistics that ARA keeps in the ordinary course of its business, but rather it would have to calculate them. Such calculations would be far from simple. Assuming an agreement could be reached on how to identify the date an overpayment was

10

"discovered" or "identified," locating this date still requires an individualized assessment of each claim at issue. And while determining the date that a refund was made may be less difficult, relating it to a specific patient would seem to still require an individual review. Given what would be required to determine all of this, and given the fact that a comparison of review times is not integral to Simms' case, the Court concludes that the work necessary to calculate these figures for the insurance and self-paid payors would be unduly burdensome in light of the probative value of the information obtained, and would be disproportionate to the benefit.

With regard to the government payors, the result is different. As discussed at the hearing, the report of ARA's expert includes the following explanation of the work performed:

> Our analysis focused on two key types of activity within these files:
>
> 1. Line items with a refund processed (58,434 line items)
> 2. Line items with no refund processed (3,740,138 line items)
>
> **Analysis of Line Items with a Refund Processed**
>
> For those line items with a refund processed, you have asked us, among other things, to analyze the records of ARA, identifying, by payer, the number of days between each of the following dates:
>
> • ARA's receipt of an overpayment
> • ARA's determination of an overpayment
> • ARA's refund of an overpayment

Dkt. No. 161, Exhibit 9 at 3. From this it appears that ARA is in possession of the data from which Interrogatory No. 7 could be answered. Accordingly, the Court **ORDERS** that ARA either respond to Interrogatory No. 7 or provide the data to Simms so that she can calculate the mean, median, and average times between these events.

### 5.     Interrogatory No. 9

Interrogatory No. 9 asks: "To the extent that ARA's Responses to the Requests for Admission served concurrently with these interrogatories include anything other than unqualified admissions, please explain in detail the basis for each response." ARA responded to the first six admissions based on the fact that it requested information on ARA Austin Imaging, Inc. instead of ARA/St. David's Imaging L.P., and stated that the reasons for its denying Request for Admissions Nos. 7-13 were included in the admissions responses. When Simms' motion to compel more detailed answers came up at the hearing, however, ARA stated that it would change its responses to Nos. 7-13 to "Denied." Accordingly, ARA is **ORDERED** to respond to Interrogatory No. 9 with regard to its denial of Requests for Admission Nos. 7-13, and further with regard to any of Nos. 1-6 that it does not admit when it amends its answers to these requests.

### E.     Billing Data

The final dispute centers around the data necessary to calculate the amounts that may have been overpaid to ARA by government payors. In his report, ARA's expert criticizes Simms' expert's conclusions. Dkt. No. 161-10 at 7-12. One of those criticisms is:

> With the exception of the payment history, Ms. Hoane's report does not consider material evidence in the case—the specific, detailed records in ARA's database. ARA personnel would have been reviewing the internal records for making their determinations of balances. It is their acts of reviewing those records that it has been alleged violated the law. Ms. Hoane has ignored the charges, adjustments and related balances that would have been reviewed by ARA employees for determining whether overpayments existed. Instead, she has re-priced the allowable amounts based on her own methods (not used in the industry) by calculating those figures on her own and has not relied on the actual records.

*Id.* at 8. Simms contends that she originally requested that her expert be provided full access to all of ARA's billing records, and when ARA refused to provide this, she ultimately compromised and

agreed to accept only the raw billing data. Given that her expert is now being criticized for not considering the additional data, Simms requests that ARA be compelled to provide access to it. ARA strenuously objects to Simms' characterization of what happened, and contends that Ms. Hoane simply never asked for material beyond the raw billing data, and the time for discovery has ended. ARA explained further that it maintains these documents—which it receives in "hard copy" format—in a system called "Touchchart," a repository of PDF images. ARA estimates that to identify and then print the specific back-up documents for each potential overpayment would require thousands of man-hours, and cost approximately $4 million, and would thus be unduly burdensome.

It is not at all clear to the Court what the proper characterization is of the events which led to Simms' request that the Court compel ARA to produce these records. While the Court agrees with ARA that it is not clear that Simms or its expert ever requested these documents specifically, it is also clear that ARA has from the beginning of discovery been very reticent to produce records from its billing system, and the Court was required to hold several hearings to get to a point where ARA billing data were produced.[5] The Court does agree with ARA that production of these documents in their entirety would be overly burdensome to ARA. This is not, however, the only manner in which the documents can be made available to Simms' expert. It would appear that ARA can provide Hoane access to Touchchart, either in ARA's offices, or remotely if that is technologically feasible. Hoane may then herself search, identify and print any records she needs. ARA is therefore **ORDERED** to provide Hoane access to Touchchart. The Court will leave it to the

---

[5] For example, the Court entered orders and held hearings on motions to compel on March 13, 2013, May 24, 2013, May 31, 2013, and June 27, 2013.

parties and their experts to work out the logistics of precisely how Hoane will be given access to the application.[6]  This access shall be provided no later than **March 26, 2014**.

### III.  CONCLUSION

In accordance with the preceding discussion, it is **ORDERED** that Relator Katherine J. Simms's Amended Motion to Compel (Dkt. No. 162) is **GRANTED IN PART AND DENIED IN PART** as set out in detail above.  Where ARA has been ordered to provide additional documents or responses to Simms, the **deadline for this is March 31, 2014**.  It is **FURTHER ORDERED** that Relator Katherine J. Simms's Motion to Compel (Dkt. No. 155) is **DISMISSED AS MOOT**.  Furthermore, to the extent Simms' motion requested any relief other than what has been discussed above, such relief is **DENIED**.

SIGNED this 19th day of March, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[6]To the extent ARA has any privacy concerns, Hoane has already signed the Protective Order in this suit and has agreed to be bound by the terms therein.  *See* Dkt. No. 78.