**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and** | § | |
| **STATE OF TEXAS,** *ex rel.* | § | |
| | § | |
| **KATHERINE J. SIMMS,** | § | |
| **RELATOR,** | § | |
| | § | |
| **V.** | § | **A-10-CV-914-LY** |
| | § | |
| **AUSTIN RADIOLOGICAL ASSOC., and** | § | |
| **ARA/ST. DAVID'S IMAGING, L.P.,** | § | |
| **DEFENDANTS.** | § | |

**<u>ORDER</u>**

Before the Court are Defendants Austin Radiological Association and ARA/St. David's Imaging, L.P.'s Motion to Exclude Opinions of David Smith Concerning Kohler Report (Dkt. No. 167) and Relator Katherine J. Simms's Response in Opposition (Dkt. No. 170). The District Court referred the above motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. Having considered the motion and response, as well as the case file and the applicable law, the Court issues the following order.

**I. DEFENDANTS' MOTION TO EXCLUDE DAVID K. SMITH**

Questions concerning the admissibility of expert evidence in federal court are governed by the Federal Rules of Evidence, and more specifically Rule 702. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).[1] Under Rule 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

---

[1] Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,

(1993), *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), and their progeny, the district judge, acting as a gatekeeper to exclude unreliable expert testimony, has discretionary authority to determine the reliability of an expert opinion in light of the particular facts and circumstances of each case. *See Kumho*, 526 U.S. at 153. Under *Daubert*, trial courts act as gatekeepers overseeing the admission of both scientific and non-scientific expert testimony. *Id.* at 147. The trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In its role as gatekeeper, the trial court must determine whether the expert testimony is both reliable and relevant. *Id*. at 589.

The Fifth Circuit has also warned that in evaluating expert testimony,

> the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. Rather, as *Daubert* makes clear, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform [an analysis under] *Daubert* . . . into a trial on the merits.

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (internal quotations and citations omitted). For example, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (emphasis added). With these principles in mind

---

training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Id*.

and having reviewed the parties' arguments, the Court will **DENY** Defendants' Motion to Exclude Opinions of David K. Smith Concerning Kohler Healthcare's Report (Dkt. No. 167).

On February 3, 2014, Defendants served Simms with the report of Charlotte L. Kohler and Byron C. Johnson ("Kohler/Johnson report"), which covers "the internal controls and processing standards employed by [Defendants] in handling credit balances." Dkt. No. 167, ¶ 1. Aside from findings regarding how Defendants handle the refund process for overpayments, Kohler and Johnson also conclude that (1) Defendants had established internal processes and controls to comply with the PPACA prior to March 23, 2010, including adequate policies and procedures, training, segregation of duties, and monitoring; (2) Defendants' controls and processes are generally better than those in the industry; and (3) Defendants' internal controls "establish an environment designed to minimize compliance risk regarding the refund of overpayments." *Id.*, Exhibit A [hereinafter Kohler/Johnson Report]. After receiving the Kohler/Johnson report, Simms designated a rebuttal expert, David K. Smith, and served Smith's report upon Defendants on or about March 6, 2014. Defendants now seek to exclude Smith's testimony because Smith (1) is not qualified to render his opinions on Defendants' billing practices and (2) is not offering legitimate rebuttal testimony. For her part, Simms argues that Smith's extensive experience in health care management qualifies him to testify as a rebuttal expert and that the opinions he offers constitute rebuttal testimony.

To the extent Defendants contend that Smith is not qualified to testify as an expert, the Court disagrees. "A trial court possesses broad discretion in ruling upon the qualifications of an expert." *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir.1983). Rule 702 explicitly provides that a witness may be qualified as an expert through "knowledge, skill, experience, training, or education." The Court's review of Smith's experience and work history demonstrates that he possesses the requisite

knowledge and experience to provide expert testimony regarding the subject at issue.  Smith has worked in the healthcare industry from 1977 through at least 2013 and has held several senior executive-level positions in health care organizations throughout his career.  From 1996 through 1999, Smith served as the Chief Financial Officer for two separate healthcare organizations.  Perhaps more importantly, Smith, as Vice President of WellCare Health Plans from 2002 through 2007, oversaw the launch and implementation of Medicare Part D and built a reconciliation team that handled over $4 billion in revenue, including Medicare Part D claims.  The fact that Smith may not have experience handling the specific requirements of FERA and the PPACA does not nullify his experience in implementing a new and significant government program such as Medicare Part D. When combined with Smith's broad and extensive experience in the healthcare industry, the Court concludes that Smith is qualified to testify and provide his opinion as an expert with regard to the Kohler/Johnson report.  *See, e.g.*, *Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 457–58 (5th Cir. 1996) (affirming a district court's finding that a witness was qualified as an expert based on the witness's broad, general experience in the insurance industry).

Defendants further assert the general charge that Smith's opinions are unreliable and fail to meet the *Daubert* standard.  They point to several conclusions reached by Smith, arguing that the conclusions are (1) unsupported by evidence and merely personal opinion or (2) that Smith is unqualified to testify with regard to the conclusion.  *See* Dkt. No. 167, ¶¶ 9–17.  Although "an expert's self-proclaimed accuracy is insufficient," "[a]n expert's testimony does not always have to be based on scientific testing; it can be based on personal experience." *Kozak v. Medtronic, Inc.*, 512 F.Supp.2d 913, 918 (S.D. Tex. 2007) (internal citations omitted).  When considering expert testimony, "[t]he proponent need not prove to the judge that the expert's testimony is correct, but

she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In this case, Simms has demonstrated by a preponderance of the evidence that Smith's opinions are reliable.  As the Court has already discussed, Smith's extensive experience in the healthcare industry qualifies him to testify as an expert on the topic at issue.  Furthermore, Smith's report shows that he considered significant documentation in formulating his opinions and that his findings are not merely personal opinions.  Dkt. No. 167, Exhibit B [hereinafter Smith Report], Attachment 2.  For example, Smith's conclusion that policies implemented by Defendants in January 2010 were new policies rather than enhancements is supported by Defendants' own policy number 2718, which indicates that the policy does not supersede any preceding policy.  Dkt. No. 170, Exhibit B at 3.  Additionally, Smith reviewed at least two credit balance reports produced by Defendants in forming his opinion that Defendants' policies prior to 2010 were ineffective.  Although the Court expresses no opinion on whether Smith's opinions are correct, the Court concludes that Simms has provided sufficient evidence to show that Smith's testimony is reliable.  Any criticisms Defendants may have regarding Smith's opinion may properly be raised through cross-examination.

Aside from Smith's qualifications and purported lack of evidence, Defendants also criticize Smith's report as not providing legitimate rebuttal testimony.  In particular, Defendants direct the Court's attention to several topics they believe constitute improper rebuttal testimony, including Smith's (1) contention that policies prior to 2010 should have been compared in the Kohler/Johnson report; (2) conclusion that Defendants' pre-2010 policies were inferior to their policies and procedures after January 2010; (3) purported erroneous characterization of policy number 2718 as a new policy rather than an "enhancement"; (4) improper argument regarding the meaning of the

word "identified"; and (5) opinion that Defendants' policies were deficient in failing to establish a reconciliation time line. Dkt. No. 167, ¶¶ 25–29. Simms addresses each of Defendants' criticisms, arguing that (1) the opinions contained in the Kohler/Johnson report are open-ended with regard to time frame; (2) evidence exists to support Smith's opinion that Defendants' procedures prior to January 2010, to the extent they existed, were inferior to the new policies; and (3) the lack of an "identification" deadline in Defendants' policies is critical to determining whether Defendants' policy was sufficient. Dkt. No. 170, ¶¶ 14–18. Neither party disputes that Smith was designated as a rebuttal expert. As such, the issue before this Court is whether Smith's proposed testimony constitutes legitimate rebuttal testimony.

"The scope of rebuttal testimony is left to the sound discretion of the trial judge." *GWTP Inv., L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383, 2007 WL 7630459 at *9 (N.D. Tex. Aug. 3, 2007). Expert evidence is deemed "rebuttal evidence" if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fᴇᴅ. R. Cɪᴠ. P. 26(a)(2)(D)(ii); *see also GWTP Inv., L.P.*, 2007 WL 7630459 at *9. In analyzing whether evidence is appropriately deemed "rebuttal evidence," other district courts in the Fifth Circuit have found answers to the following three questions helpful:

> First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

*Poly-Am., Inc. v. Serrot Int'l, Inc.*, No. 300-CV-1457, 2002 WL 1996561 at *15 (N.D. Tex. Aug. 26, 2002). Evaluating whether an expert witness has submitted legitimate rebuttal testimony, however, poses "a more procedural [rather] than substantive" question. *Wireless Agents, LLC v.*

*Sony Ericsson Mobile Commc'ns AB*, No. 3:05-CV-289, 2006 WL 5127278 at *2 (N.D. Tex. May 31, 2006).  In performing this analysis, the court "does not ask whether the designating party has designated a rebuttal expert whose opinions have probative value or even whether they will be admissible at trial," but focuses on (1) the evidence the rebuttal expert purports to contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence.  *Id.*

        Here, Smith is purporting to rebut evidence that Defendants' internal policies and controls for the identification and resolution of "credit balances" was "adequate" and "generally better" than the industry both before and after January 2010.  The dispute over the scope of Smith's report stems, at least in part, from Defendants' contention that opinions regarding policies in place prior to 2010 are not proper rebuttal, as the Kohler/Johnson report did not offer such opinions.  However, the Kohler/Johnson report notes that Defendants had "established internal processes and controls in an effort to comply with the PPACA 60 day repayment timeframe requirement effective March 23, 2010, *prior to this effective date*."  Kohler/Johnson Report at 3 (emphasis added).  Further, Kohler/Johnson include findings concerning the development of an internal credit balance reporting process starting in August 2009.  *Id.* at 8.  The report refers to this as a "supplemental control mechanism" designed to assist Defendants in determining and refunding government overpayments.  Thus, opinions concerning ARA policies prior to January 2010 were included in the Defendant's experts' report.  In addition, Kohler/Johnson's findings are also not limited to Policy and Procedure Number 2718, which was the formal policy outlining Defendants' approach to dealing with refunding government overpayments.  As noted by Kohler/Johnson, their opinions are also based on

training, "supplemental control mechanisms," and the segregation of job duties.  Therefore, Smith's opinions are proper rebuttal to these opinions. [2]

To the extent Defendants assert that Smith's criticism of their failure to establish a reconciliation time line is improper, the Court is similarly unconvinced.  Kohler/Johnson explicitly found that Defendants had implemented "adequate" policies that were "generally better" than the industry.  This conclusion is obviously based on Defendants' policies and processes, which Smith criticizes as being deficient because Defendants failed to establish a reconciliation time line.  Smith also submits that the lack of a reconciliation time line fails to meet accepted industry practices, a conclusion that rebuts Kohler/Johnson's assertions that Defendants' policies and procedures were "adequate" and "generally better" than the industry.  Smith Report at 4.  This opinion is clearly contradictory to the determinations made by Kohler/Johnson.

The Court also rejects Defendants' contentions that Smith's purported erroneous characterization of policy number 2718 as a new policy rather than an "enhancement" and his improper argument regarding the meaning of the word "identified" merit exclusion of his testimony. First, Smith's characterization of policy number 2718 as a new policy obviously contradicts Kohler/Johnson's opinion that the policy was merely an enhancement.  The evidence relied upon by Smith in stating this conclusion has already been discussed.   Any criticisms of Smith's characterization of the policy can be addressed through cross-examination.  Second, it is unclear to the Court precisely where Smith argues a "different" meaning of the word "identified."  Smith does

---

[2]To the extent that ARA contends that Smith's opinions regarding pre-2010 policies are improper because of its position on the scope of FERA, that issue is presented in the parties' cross-motions for summary judgment (which remain pending), and will be resolved in those motions. Further, the argument is not a proper *Daubert* or Rule 702 argument, but rather is a claim that such opinions are irrelevant.  That objection can be raised at trial if necessary.

criticize Kohler/Johnson's assumption that March 23, 2010, was the initial date for compliance, but nowhere does Smith mention the word "identified."  Smith's discussion of the word "identified" is contained mostly in his critique that Defendants' policies are deficient for failing to include a reconciliation time line.  As discussed above, Smith's criticism of Defendants' failure to include a reconciliation time line within its controls and policies constitutes legitimate rebuttal testimony.

Finally, as the parties' cross-motions for summary judgment are still pending, it is inappropriate to exclude Smith's testimony based upon the Defendants' arguments regarding the Medicare Secondary Payor Act.  Whether Smith's opinions are admissible or proper will be sorted out when those motions are resolved, and if Defendants believe the district judge's ruling makes any of Smith's opinions irrelevant, they can make that objection at trial if necessary.

## IV.  CONCLUSION

Accordingly, Defendants Austin Radiological Association and ARA/St. David's Imaging, L.P.'s Motion to Exclude Opinions of David Smith Concerning Kohler Report (Dkt. No. 167) is **DENIED.**

SIGNED this 4th day of June, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE